Muriel ARONBERG (Plaintiff),
Respondent,

v.

Lawrence M. ARONBERG (Defendant),
Appellant.

No. 30014.

St. Louis Court of Appeals.

Missouri.

Oct. 7, 1958.

Motion for Rehearing or to Transfer to
Supreme Court Denied Nov. 3, 1958.

J. L. London, Herman Willer, St. Louis, Susman, Mayer & Willer, St. Louis, of counsel, for appellant.

William W. Crowdus, St. Louis, for respondent.

RUDDY, Presiding Judge.

This is an appeal by defendant from an order denying his "Motion to Correct Record Nunc Pro Tunc."

The circumstances that form the foundation of the order from which defendant appeals had their origin in 1948 when plaintiff, Muriel Aronberg, filed a petition for divorce. In this petition after alleging certain indignities said to have been committed by the defendant, Lawrence M. Aronberg, plaintiff alleged that one male child was born of the marriage. Plaintiff concluded her petition with a prayer for a decree of divorce, custody of the minor child and a reasonable sum for the support of said minor child. The prayer of plaintiff's petition contained the further request "that the Court adjudge to her alimony for her support and maintenance * * *."

A decree of divorce was granted plaintiff on May 5, 1948. Prior thereto plaintiff and defendant entered into an agreement entitled "Stipulation." This stipulation was filed in the divorce proceedings on the day the decree of divorce was granted. In this stipulation it was "stipulated and agreed" by and between plaintiff and defendant "that in the event the Court shall grant to plaintiff a decree of divorce upon her petition" that plaintiff "shall have the custody and control of the minor child" with visitation privileges to defendant at

all reasonable times, subject to certain conditions enumerated in the stipulation.

It was further provided in said stipulation that "Defendant shall pay to plaintiff the amount of Seventy-five ($75.00) Dollars per month for the support and maintenance of said minor child" and that "Defendant shall pay to plaintiff the amount of One Hundred and Twenty-five ($125.00) Dollars per month as and for her alimony."

It was further provided that defendant "keep in force" a described policy of life insurance on his life in which the minor child was the beneficiary. Another provision in said stipulation provided as follows: "Each of the parties hereby releases the other party hereto of all rights and claims in and to the property, estate or interests of the other party hereto which each may now have, possess, or hereafter acquire, against the other party and each of the parties hereto waives any claim of any kind whatsoever to any property or estate of the other party hereto whether now in possession or hereafter acquired."

The stipulation concluded with the following provision: *"Both parties agree that this agreement shall be subject to the approval of the St. Louis Circuit Court* and that the care and custody and maintenance of the minor child aforesaid shall at all times be open to the determination of the Judges of said Court with respect to the best interest of said child; both parties agree that said Court shall retain jurisdiction of both plaintiff and defendant in this cause to render any judgment that said Court may deem proper affecting the interest of the minor child aforesaid." (Emphasis supplied.)

On the day of the hearing on the petition for divorce plaintiff appeared in person and by attorney and the defendant did not appear but was represented by an attorney and on this same day the trial judge made the following entry in the "Judge's Trial Docket Book":

"Decree for pltf custody
of child $75.00 per mo for support
of child $125.00 per mo alimony
Visitation as per stip filed."

At the conclusion of the hearing the attorneys for the plaintiff and defendant prepared and signed a "Memorandum for Clerk," which was filed with the Clerk of the Court and appears in the files of the case. The Memorandum reads as follows:

"In the Circuit Court, City of St. Louis
Murial Aronberg
vs.
Lawrence M. Aronberg
No. 17970 Room 16 May 5, 1948.

Memorandum for Clerk

"Cause heard; decree of divorce for plaintiff; custody of child Jerome Milton Aronberg awarded to plaintiff with right of visitation to defendant as per stipulation filed; $75 per month for support of said child; $125 per month alimony as per stipulation filed; stipulation presented to court and approved.

"Melvin L. Hertzman and
Sam Levin Attorneys for plaintiff
"Susman, Mayer & Willer Attorneys for defendant."

This Memorandum has on it the filing stamp of the Clerk of the Court showing it was filed with the Clerk on May 5, 1948.

The decree which was entered in the permanent judgment record of the trial court, after reciting the appearances and after granting a decree of divorce to plaintiff with custody of the minor child, reads as follows:

"It is further ordered, adjudged and decreed by the Court that the defendant shall have the privilege of visiting with said minor child at all reasonable times, taking into consideration the

professional hours of defendant, and that the defendant shall have the temporary custody of said minor child from June 15th to September 1st, of each year, until the further order of the Court.

"It is further ordered, adjudged and decreed by the Court that the plaintiff have and recover of the defendant, as and for the support and maintenance of said minor child, the sum of $75.00 per month, until the further order of the Court, payable on the 5th day of each month, the first payment to be made and to become due and payable forthwith.

"It is further ordered, adjudged and decreed by the Court that the plaintiff also have and recover of the defendant, as and for alimony, the sum of $125.00 per month, until the further order of the Court, payable on the 5th day of each month, the first payment to be made and to become due and payable forthwith.

"It is further ordered by the Court that the costs of this proceeding be paid by the defendant, and in default of the payment of said costs or any of the installments awarded as aforesaid, as and for alimony and as and for the support and maintenance of said minor child, as and when the same become due and payable, execution issue therefor.

"Stipulation filed."

On May 6, 1957, nine years after the decree of divorce was granted, plaintiff filed a motion "for Modification of Judgment for Alimony and Support Money." In this motion she alleged, inter alia, that defendant is a practicing physician and surgeon and at the time of the granting of the judgment and decree of divorce he had an annual gross income of $15,000, more or less, and that defendant's annual gross income is now approximately $60,000.

Plaintiff further alleged in said motion that the amount of monthly alimony and child support awarded by the court in its decree of May 5, 1948, is not sufficient to maintain plaintiff and said minor child according to their former station in life. She concluded her motion with a prayer for an order increasing the monthly allowance to plaintiff of alimony and support of the minor child.

After the filing of plaintiff's motion to modify defendant filed his "Motion to Correct Record Nunc Pro Tunc." In this motion defendant asks the court to correct the record to conform to the facts and "to conform to the written settlement Agreement entered into by and between" plaintiff and defendant and "duly filed in this court on May 5, 1948, the date upon which the court granted a decree of divorce to the plaintiff, Muriel Aronberg, after having approved the said contract of settlement which was duly filed for record, and a Minute made thereof."

Defendant further alleged that the error was committed by the Clerk of the Court in failing to note or observe in the original decree that the parties had effected a full, complete and final settlement as set out in said "contract or stipulation, the terms of which contract were duly filed in this case and are a part of the record * * * in which stipulation the parties thereby fully released each other," of all rights and claims in and to the property, estate or interests of the other party and that each of the parties waived any claim of any kind whatsoever to any property or estate of the other party.

It is further alleged by said defendant that there was a full and final settlement agreed upon by and between the parties and that the parties agreed that the agreement was to be subject to the approval of the Court. Defendant further alleges that the decree of the Court fails to correctly reflect the terms, conditions and provisions of the Contract of Settlement and that the Court has no jurisdiction to change any

alimony provision or to retain jurisdiction with reference to any alimony.

The motion concludes with a prayer asking that the decree be corrected and modified nunc pro tunc to conform to the facts in the case and to the Contract of Settlement which defendant claims was duly approved by the trial court on the 5th day of May, 1948, and made a part of the record. The specific corrections prayed for are as follows:

"* * * that the Decree be corrected by deleting the words 'until the further order of the Court' in lines 9 and 10 of the decree and to delete therefrom the words 'in default of the payment of said costs or any of the installments awarded as aforesaid, as and for alimony' in lines 13 and 14 and 15 of said decree, and that the decree further be corrected to show that the Court approved the Contract or Stipulation of Settlement."

Subsequent to the filing by the defendant of his "Motion to Correct Record Nunc Pro Tunc" he filed another motion styled "Motion to Quash" in which he asked the Court to quash the motion of plaintiff for modification of the judgment for alimony and support money contending that the Court had no jurisdiction to proceed with said motion.

One hearing was held by the trial court on the two motions filed by defendant. As a result of the dual nature of this hearing some confusion has ensued. Defendant in the statement in his brief has referred to some facts that were elicited from defendant when he testified at the hearing in the trial court. Plaintiff contends that this testimony by the defendant, to which she made objection, was not admissible.

We need not concern ourselves with this contention for the reason the evidence was offered in support of defendant's motion to quash. When defendant was offered as a witness at the joint hearing of the two motions, plaintiff objected on the ground

parol evidence cannot be made the basis of a nunc pro tunc order. Thereupon defendant's counsel made the following statement to the Court: "We are using this, if your Honor please, on the motion to quash." Separate orders were made by the trial judge on the two motions. The appeal in this case is "from the order and judgment denying defendant's motion to correct the record nunc pro tunc." Because of the dual nature of the hearing the transcript filed in this court includes the evidence offered in support of the motion to quash. However, we shall consider only the evidence offered in support of the motion to correct the judgment nunc pro tunc. We will not consider the testimony of the defendant which was offered solely in support of his motion to quash.

The first three points relied on by defendant in his brief are devoted to the right of a husband and wife to make a valid contract settling their marital rights and to the legal nature of the "Stipulation" signed by plaintiff and defendant and filed in the cause at the hearing on plaintiff's petition for divorce. Defendant contends the law in this State is well settled that a husband and wife, in contemplation of separation and divorce, may by valid contract between themselves, settle and adjust all property rights growing out of the marital relation, including the wife's right of dower and claim for alimony, support and maintenance, citing in support of this contention, North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061. The defendant points out that the Court in the North case distinguishes those cases in which the parties merely suggest the amount of alimony to be awarded to the wife by the Court from those cases in which the parties have, by written agreement, settled and adjusted all of their property rights, including dower, alimony and maintenance.

We find it unnecessary to determine the legal nature of the "Stipulation" that forms the basis of the controversy in this appeal, because of the conclusion we

have reached. If the "Stipulation" in the instant case is merely advisory in nature, then the trial court is not compelled to adopt it but may treat it as only advisory. However, the trial court may adopt such a stipulation and when it does "adopt such a stipulation and embodies it in the judgment entered by the court, or under the court's direction, the stipulation then becomes merged in the court's judgment and the judgment is then a judgment by consent, and is as valid and binding on the parties as though it were made by the court without any stipulation by the parties * * * ." Luedde v. Luedde, 240 Mo. App. 69, 211 S.W.2d 513, loc. cit. 517. It will be observed in the Luedde case that in order for the stipulation to become a part of the judgment it must be adopted by the court and must be entered by it in its judgment, or the court may by some act direct the stipulation become a part of the judgment. We interpret the Luedde case to hold that some minute entry or act of the court is necessary to show that the court has adopted either some, or all, of the provisions of the stipulation.

■ If the "Stipulation" in the instant case is a valid written agreement that settles and adjusts all the property rights of plaintiff and defendant, including dower, alimony and maintenance it requires approval and ratification by the trial court. In the case of North v. North, supra, 100 S.W.2d loc. cit. 586, the Court said:

"The husband had a lawful right to make such a contract. 1 R.C.L. § 81, p. 935, states the rule thus:

" ' * * * While it is true that husband and wife cannot lawfully enter into an agreement for divorce, yet it is well settled that the amount of alimony which the husband is to pay to the wife, the terms of the payment and the length of time during which such payment is to continue, may be all arranged between them by consent, *subject to the ratification of the court.'* " (Emphasis supplied.)

In this same case (North v. North) the court held that it was the duty of the court to examine the agreement and further held that it was the duty of the court to approve the agreement if it found the contract was free from fraud, collusion, or compulsion and was fair to the wife. Thus we find that the mere entering into the contract between the parties and the filing of the contract in the cause do not make it a part of the judgment of the court until the court examines the entire contract and ratifies or approves it, either by a minute on the trial docket of the Judge or by making some other appropriate order or direction. In addition to what has been said in the North case about the need for approval or ratification of the agreement, we have a provision in the "Stipulation" in the instant case that specifically calls for approval by the trial court.

Therefore, from what has been pointed out regarding the need for approval of the "Stipulation" by the trial court, the only question before this court is whether there is sufficient evidence of judicial action by the trial court in connection with the hearing of plaintiff's petition for divorce in May, 1948 showing that the court approved all of the terms of the "Stipulation."

■ In Doerschuk v. Locke, 330 Mo. 819, 51 S.W.2d 62, loc. cit. 64, the Supreme Court stated the prevailing rule governing the right of a court to correct its records at a term subsequent to the term at which the order was made when it quoted from Collier v. Catherine Lead Co., 208 Mo. 246, 106 S.W. 971, loc. cit. 977, as follows:

" 'The rule is succinctly stated by Burgess, J., in Ross v. [Kansas City, Ft. S. & M.] Railway Co., 141 Mo. [390], loc. cit. 395, 38 S.W. 926, 42 S.W. 957, thus: "The question of the power and authority of a circuit court to correct its record by nunc pro tunc proceedings has been many times before this court, and the rule announced seems to be that, in order to justify it in so doing, the record must in some

way show, either from the judge's minutes, the clerk's entries, or some paper in the cause, the facts authorizing such entries. No such entries can be made from the memory of the judge, nor on parol proof derived from other sources. (Citing cases) " ' "

■■■ The important principle to remember in determining the court's authority to correct its records is that it can only correct the record so as to reflect the action actually taken by the court at the time it entered its order or judgment. A nunc pro tunc entry can only be employed to correct a clerical mistake or misprision of the clerk. Such an entry cannot be invoked to correct a mistake or oversight of the judge, nor be used to correct judicial errors, nor to render a judgment different from that actually rendered, even though the judgment actually rendered was not the judgment the judge intended to render. Wiggins v. Perry, 343 Mo. 40, 119 S.W. 2d 839, 126 A.L.R. 949; Campbell v. Spotts, 331 Mo. 974, 55 S.W.2d 986; Clancy v. Herman C. G. Luyties Realty Co., 321 Mo. 282, 10 S.W.2d 914; Burnside v. Wand, 170 Mo. 531, 71 S.W. 337, 62 L.R.A. 427; Arkansas-Missouri Power Company v. Hamlin, Mo.App., 288 S.W.2d 14; Schenberg v. Schenberg, 307 S.W.2d 697.

The court cannot record a judgment that was never in fact rendered. A nunc pro tunc order may be made only to supply omissions in the exercise of functions which are merely clerical. The order should simply record the actual decision of the court and relates back to the time that the entry should have been made. In Campbell v. Spotts, supra, 55 S.W.2d loc. cit. 989, the court said:

"Wherever, therefore, the clerk has failed to enter up a judgment or enters up a wrong judgment, and the order is sought simply that the proper entry may be made, the power may be exercised; but when the court has omitted to make an order which it might or ought to have made, it cannot be made at a subsequent term by nunc pro tunc entry. (Citing cases.) "

An excellent statement which demonstrates the boundaries within which the court may act in entering a nunc pro tunc order is contained in 10 A.L.R. at page 568, and is as follows:

"The power of a court to amend its record to correct clerical errors, cure defects, or supply omissions in it, after the term expires, is a power to repair, not to rebuild, and is not to be confounded with a power to create a new record. It presupposes an existing record in which there is a clerical mistake, defect, or lack which should, and, if known, would, have been rectified or supplied at the time. Gagnon v. United States, 193 U.S. 451, 48 L.ed. 745, 24 Sup.Ct.Rep. 510, affirming 38 Ct.Cl. (Fed.) 10."

The above authorities and many others that could be cited, inevitably bring us to the primary determination we must make in resolving the question posed by this appeal, i. e., "what was the judgment the trial court rendered at the time of hearing plaintiff's petition for divorce."

■■■ In resolving this primary determination we must follow·certain guideposts. When a judgment is in fact entered and the motion for a nunc pro tunc order seeks to change it, the presumption is indulged that the judgment entered is the judgment actually rendered by the court, and the burden is on the movant, in this case the defendant, to show by competent evidence that a different judgment was in fact rendered. In re Fulsome's Estate, Mo.App., 193 S.W. 618; Schulte v. Schulte, Mo., 140 S.W.2d 51. In the Fulsome's Estate case the court said [193 S.W. 620]:

"Had the court made the order nunc pro tunc as prayed for, then in reviewing that action, it would be our duty to uphold it if there were any substantial evidence on which to base it. Sperling v. Stubblefield, 105 Mo.

**682**

App. 489, 494, 79 S.W. 1172. The same consideration must be shown the trial court when, as in this case, he decides against the movent. His action must be upheld unless the evidence in support of the motion is so clear as to leave no reasonable ground upon which to reject it."

In Pulitzer Publishing Co. v. Allen, 134 Mo.App. 229, 113 S.W. 1159, loc. cit. 1160, the court said: "We are admonished in well-considered opinions to administer this character of relief with caution, for it affords opportunity to alter judgments previously given, under the guise of correcting clerical misprisions, and these alterations may work hardship."

■ We have shown that before a judgment may be corrected nunc pro tunc there must be some record either in the minutes of the judge, the clerk's entries, or in some paper in the cause authorizing the correction. An order nunc pro tunc cannot be based upon the judge's recollection of what took place or upon parol evidence. Wiggins v. Perry, 343 Mo. 40, 119 S.W.2d 839, 126 A.L.R. 949; Doerschuk v. Locke, 330 Mo. 819, 51 S.W.2d 62; Clancy v. Herman C. G. Luyties Realty Co., 321 Mo. 282, 10 S.W.2d 914; E. C. Robinson Lumber Co. v. Hazel, Mo.App., 271 S.W.2d 610.

It must be a record from which the actual events of the divorce hearing in May 1948 can be clearly ascertained and known and it must be a record made contemporaneously with or preceding the date of the court's action when granting the decree of divorce. The record relied on must show that the judgment applied for *was actually rendered by the court*. Shepard v. Tinsley, 149 Mo.App. 428, 129 S.W. 1049.

■ In one of the points relied on by defendant he asserts that the "Memorandum for the Clerk" signed by counsel for plaintiff and defendant is binding on the parties and constitutes a judicial admission that the award made by the court was "as per stipulation filed." It is true that the memorandum signed by the attorneys for both parties shows that the stipulation was presented to the court and approved. However this memorandum was not signed or approved by the trial judge and only reflects what the attorneys thought the trial judge did or what they wanted the trial judge to do. This memorandum cannot be used to contradict the actual minute entry made by the court which shows the action actually taken by the court. We do not mean to hold that this memorandum may not be considered in a nunc pro tunc proceeding. What we do hold is that it cannot be used to change the judgment actually rendered by the court.

In the case of Becher v. Deuser, 169 Mo. 159, 69 S.W. 363, the Supreme Court in discussing a similar memorandum prepared by one of the attorneys in the case said the memorandum was only the attorneys' understanding of the judgment and held that such a memorandum was insufficient for a nunc pro tunc order if it had not been approved by the trial court.

Defendant calls our attention to a rule of the Circuit Court which requires stipulations to be in writing before they will be recognized or enforced by the court. The rule does not make mandatory the approval of the stipulation by the court. It merely requires the stipulation to be in written form before it will be considered by the court. One other rule of the Circuit Court is called to our attention by defendant. This rule requires the moving party, when an order is granted in his favor, to prepare and hand to the clerk a memorandum thereof, and until this is done no record entry shall be required to be made of such order. This rule can be no authority for entry of a judgment in conformity with the memorandum if the memorandum does not reflect the judgment or order actually rendered by the court.

Defendant also asserts that the entries made by the trial judge in the "Judge's Trial Docket Book" show the allowances to the wife "as per stipulation filed." We

do not agree with this contention. It is our opinion that the only part of the "Stipulation" adopted or approved by the trial judge, according to his minute entry, is the part which pertains to the visitation privileges accorded defendant. The only reference the court made in its minute entry in connection with the stipulation had to do with the visitation privileges. It is true that it allowed support money for the child and alimony to the wife in the same amounts as agreed to by the parties in their "Stipulation," but we do not construe the court's minute entry as adopting or approving the provisions of the "Stipulation" applicable to these items. The court, so far as the minute entry is concerned, may have allowed these amounts for support and alimony without the aid of the "Stipulation." The thing that is obvious from a reading of the court's minute entry is that there is nothing in its entry showing or signifying in any manner that it intended to approve all the provisions of the "Stipulation." As pointed out heretofore, there were provisions in the "Stipulation" other than those pertaining to custody of the minor child, support, alimony and visitation privileges. No mention of any kind was made by the trial judge in his minute entry about these other provisions of the "Stipulation." The trial court made no entry indicating adoption or approval of the entire "Stipulation." The provision of the "Stipulation," with the exception of those provisions dealing with the custody and support of the minor child and the defendant's visitation privileges, were interdependent. If the court had intended to adopt or approve the "Stipulation" it would have required a very simple minute and it would have been unnecessary for the court to make separate minutes covering custody of the minor child, support money for said child and alimony for the wife. If the court erred in failing to approve this agreement, if it found it to be fair, it would be a judicial error that cannot be corrected in a nunc pro tunc proceeding, or if the court omitted to make an order approving or adopting the "Stipulation," which it might or ought to have made, it cannot be made later in a nunc pro tunc proceeding. Campbell v. Spotts, supra. We do not think that it is clear and beyond question that the trial court approved the "Stipulation."

 In so holding we are mindful of the presumption of correctness that attaches to the original judgment and the caution that is urged by the authorities in ordering a nunc pro tunc entry. In addition, we are mindful that it is the burden of defendant to adduce evidence that demonstrates beyond question the incorrectness of the judgment. Also we must give weight to the order of the lower court when it refused to correct the record from which order this appeal was taken. Schulte v. Schulte, supra.

The clerk when drafting the judgment and decree for the permanent record did not think the court either adopted or approved the "Stipulation." The trial judge who heard defendant's "Motion to Correct Nunc Pro Tunc" found the evidence insufficient to authorize a correction of the judgment.

 The clerk used the court's minute entry as the foundation for the ultimate permanent judgment and decree. Defendant has failed to adduce evidence showing conflict between the judgment and decree as drafted by the clerk and the entry in the "Judge's Trial Docket Book."

Defendant has cited a number of authorities wherein it was held that a stipulation entered into during the trial of a case concerning either the evidence or the pleadings in the case is a judicial admission that binds the parties. These cases merely concerned the binding nature of a stipulation between the parties, which question is not before us in this appeal. In this connection, we think it not amiss to state that nothing said in the course of this opinion was intended to construe the legal nature of the "Stipulation" in ques-

tion. Nor do we intend to hold that the provisions of the "Stipulation" may or may not be considered by the trial court when hearing plaintiff's motion for modification of the decree.

The order and judgment of the Circuit Court denying defendant's motion to correct the record nunc pro tunc is affirmed.

ANDERSON, J., concurs.

JOHN C. CASEY, Special Judge, concurs in result.

JOHN C. CASEY, Special Judge (specially concurring).

I would arrive at the same result in this cause as that expressed in the majority opinion, but on different grounds.

In essence the majority opinion holds that the record of the judgment and decree entered in the trial court on May 5, 1948 should not be corrected nunc pro tunc on the premise that "the only question before this court is whether there is sufficient evidence of judicial action by the trial court in connection with the hearing of plaintiff's petition for divorce in May, 1948 showing that the court approved all of the terms of the 'Stipulation'."

In support thereof, the majority opinion states, "The trial judge who heard defendant's 'Motion to Correct Nunc Pro Tunc' found the evidence insufficient to authorize the correction of the judgment." Factually, the conclusion of the trial judge, in this respect, was stated in the following language:

"The request that the decree be corrected to show that the Court's approval of the Stipulation filed herein is denied for the reason that *there is no paper of record, entry, minute or notation of record in the file to show or indicate that said stipulation was approved by the Court.*" (Emphasis supplied.)

However, in the majority opinion it is conceded that adversary counsel, for the respective parties litigant, on May 5, 1948 the date of the hearing of the action for divorce, executed and filed a Memorandum for Clerk reading as follows:

"In The Circuit Court City of St. Louis

"Muriel Aronberg, Plaintiff
 vs.
Lawrence Aronberg, Defendant
"No. 17970 Room 16 May 5, 1948

"Memorandum For Clerk

"Cause heard; decree of divorce for plaintiff; custody of child Jerome Milton Aronberg awarded to plaintiff with right of visitation to defendant as per stipulation filed; $75 per month for support of said child; $125 per month alimony as per stipulation filed; stipulation presented to court and approved.

"/s/ Melvin L. Hertzman and
"Sam Levin,
"Attorneys for Plaintiff

"Susman, Mayer & Willer,
"Attorneys for Defendant"

In the majority opinion, referring to such memorandum, it was said:

"We do not mean to hold that this memorandum may not be considered in a nunc pro tunc proceeding."

The majority view quotes an excerpt from the opinion of Burgess, J., in Ross v. Kansas City, Ft. S. & M. Railway Co., 141 Mo. 390, 391, 395, 38 S.W. 926, 42 S.W. 957 (quoted with approval in Collier v. Catherine Lead Co., 208 Mo. 246, 106 S.W. 971, and Doerschuk v. Locke, 330 Mo. 819, 51 S.W.2d 62, 64) to the effect that in order to justify a correction of its record by nunc pro tunc proceedings:

" * * * the record must in some way show, either from the judge's minutes, the clerk's entries, or some paper in the cause, *the facts authorizing such entries.* No such entries can be made

from the memory of the judge, nor on parol proof derived from other sources." (Emphasis supplied.)

What are the "facts authorizing such entries" as shown by the papers in this cause? Adversary counsel for the respective parties litigant, pursuant to rules 10 and 11 of the Circuit Court, requiring the filing of a memorandum "when an order is granted or a proceeding had," filed such memorandum, signed by counsel for both parties on May 5, 1948 solemnly stating among other matters,

"* * * $125 per month alimony as per stipulation filed; stipulation presented to court and approved."

In the majority opinion it was stated:

"This memorandum cannot be used to contradict the actual minute entry made by the court which shows the action actually taken by the court."

With this, I cannot agree. If such memorandum may "be considered in a nunc pro tunc proceeding" as held in the majority opinion, it should be considered for all purposes. I believe that great weight should be accorded such a document filed in the cause, by adversary counsel, contemporaneously with the conclusion of the hearing of the case.

In opposition to this Memorandum for Clerk executed by adverse counsel for both litigants the majority opinion lays great stress on the abbreviated, unpunctuated, script notation entered in the "Judge's Docket Book". Such notation in the "Judge's Docket Book" was called to the attention of this court in defendant's Statement Brief and Argument and was referred to in oral argument of this case. I agree that such notation may be considered in this case. In determining the facts as to whether the trial court did approve such stipulation the question is whether such notation should be given such weight as to overcome the positive, unqualified statements of adverse counsel in the above quoted memorandum in which it was unequivocally stated:

"* * * stipulation presented to court and approved."

The entry made in abbreviated, unpunctuated script in the docket book read:

"Decree for pltf custody of child $75.00 per mo for support of child $125.00 per mo alimony Visitation as per stip filed."

Certainly there is no positive notation contained in such docket book entry to the effect that the trial judge disapproved the stipulation.

The stipulation and agreement provided for Seventy-five ($75.00) Dollars for the support and maintenance of said minor child. The trial judge must have found such amount fair and just for he noted "$75.00 per mo. for support of child" in his docket book. With reference to the amount payable to the wife, the stipulation provided "Defendant shall pay to plaintiff the amount of One Hundred Twenty-five ($125.00) Dollars per month as and for her alimony." The trial court must have found that said sum was just (i. e. free from fraud, collusion or compulsion and fair to the wife) or the trial court would not have allowed such amount nor made the notation "$125.00 per mo alimony" in his docket book. In North v. North, 339 Mo. 1226, 100 S.W.2d 582, 587, the Supreme Court said: "Where such contracts are free from fraud, collusion or compulsion, and are fair to the wife, the courts have no right to disregard them."

After the words "Decree for pltf", four matters, properly the subject of a decree and judgment, are alluded to in this note, 1) custody of child, 2) support money for child, 3) monthly alimony and 4) visitation. Following these is the entry "as per stip filed." How can it be said that the decree, which made provisions identical with those of the stipulation with respect to the four matters properly the subject of a decree and judgment (i. e. within the jurisdiction of the Court), indicated anything other than that the Court "approved" the stipulation? Did the trial court mean to put

these in the conjunctive and intend to make a note that the four items should be incorporated in the decree "all as per stipulation filed"?

In the case of Luedde v. Luedde, 240 Mo. App. 69, 211 S.W.2d 513, loc. cit. 517–518, this court stated:

"On the contrary, it conclusively appears that the Court intended to and did approve and adopt the stipulation of the parties as and for its judgment. *This is shown by the Court's approval and adoption of the language: 'all in accordance with stipulation'.*" (Emphasis supplied.)

Did the words and abbreviations "as per stip filed" refer to all four items, viz., the custody of the child, his support, the alimony for the wife and visitation privileges? In the form written I believe it is difficult to determine, from such docket book entry alone, exactly what was intended by the trial court. In my view it is just as reasonable to say that the phrase "as per stip filed" referred to all four items, including that for the alimony here in litigation, as it is to say, as set forth in the majority opinion, that:

"It is our opinion that the only part of the 'Stipulation' *adopted or approved by the trial judge,* according to his minute entry, is the part which pertains to the visitation privileges accorded defendant. The only reference the court made in its minute entry in connection with the stipulation had to do with the visitation privileges." (Emphasis supplied.)

In so stating, the majority opinion tacitly concedes that the entry "as per stip filed" indicates the trial court's adoption and approval of at least a part of the stipulation.

In my opinion the clear, unequivocal language of the memorandum for clerk, signed by adversary counsel and filed of record May 5, 1948 in part, "$125 per month alimony as per stipulation filed; stipulation presented to court and approved.", in contrast with the above quoted note in the

judge's docket book, is a sufficient record and paper filed in the cause to warrant and demand a correction of the judgment record, nunc pro tunc, "to show that the court approved the contract or stipulation of settlement" as prayed in defendant's motion.

If it be thus determined that the judgment record should have indicated an approval of the stipulation of April 30, 1948, this court is squarely faced with the task of deciding whether the trial court erred in refusing to correct the formal judgment and decree by deletion as prayed by defendant. In ruling on this question below, Judge McMillian stated in the "conclusion" of his memorandum opinion:

"The allowance in question is statutory alimony under Section 452.070, R.S.Mo.1949 V.A.M.S. Therefore, it is of no consequence that the stipulation had not contained the limitation 'until the further order of court.' Likewise, the terms 'in default of payment of any installment as and for alimony, execution to issue therefor' is mere incident to the Court's judgment awarding alimony.

"Defendant's motion to correct record nunc pro tunc by deleting words 'until further order of court' and the words 'in default of the payment of said costs or any installments awarded as aforesaid, as and for alimony,' is hereby denied and overruled in that both phrases are incidental to statutory judgments under Section 452.070, R.S.Mo.1949, V.A.M.S."

In this I believe the conclusion and order of such trial judge is correct and should be affirmed upon the authority of, and for the reasons stated in the opinion of this court in the case of, Alverson v. Alverson, Mo.App., 249 S.W.2d 472, 473.

In the Alverson case the background situation was almost identical with that presented in the case at bar. There alimony was sought in the petition, and the stipulation provided that "party defendant

is to pay to party plaintiff, as and for alimony, the sum of One Hundred Dollars ($100.00) each month commencing * * ". In Alverson, by other provisions of the stipulation, "plaintiff agreed to release defendant from any and all obligations she had contracted during marriage" (loc. cit. 473). Evidently the office of the St. Louis Circuit Court used the same form in entering the judgments in Aronberg and in Alverson, since the decree entered in the Alverson case was similar, and excepting for dates, almost in haec verba, to that in the instant case except that, because there were no children involved in the Alverson case, no provisions relating to custody and support of a minor child were contained in the Alverson Decree. In Alverson, as in Aronberg, plaintiff filed a motion to modify the decree seeking an increase in alimony. In Alverson, as in Aronberg, defendant countered with a motion to correct the record, nunc pro tunc, the exact wording of the decree sought to be deleted in Alverson being "until the further order of the court". In the Alverson case the trial court *sustained* defendant's motion, ordering, nunc pro tunc, the deletion of the words, "until the further order of the court." On special appeal granted in the Alverson case, the trial court was reversed by this court.

In a well reasoned opinion in the Alverson case, supra, written by the late Judge Bennick, in which Judges Ruddy and Anderson concurred, this court stated,

"In drawing their stipulation the parties themselves had identified the sum which defendant was to pay as being 'as and for alimony', and the court employed such identical language in writing its decree, which, as we have pointed out, was within the scope of its statutory authority. Likewise the judge and clerk had referred to the allowance as 'alimony' in their respective minute entries at the time

of the trial and disposition of the case. Furthermore the court was not content with merely ordering that payments be made 'as and for alimony', but what is more conclusive of its intention to enter a decree for statutory alimony is the fact that it then went on to provide, without objection from the parties, that in default of the payment of any of the installments, 'execution issue therefor'. If defendant's obligation had been meant to depend upon contract, plaintiff's remedy upon default would have been by action on the contract, and not by execution, which could only be sued out upon a judgment previously obtained.

"It consequently follows that the allowance in question must be construed as having been one of statutory alimony, which carried with it the power of the court to make such alterations from time to time upon application of either party as might be proper under the circumstances. * * It was therefore of no consequence that the stipulation itself had not contained the limitation, 'until the further order of the court', since the court's reserved authority followed by operation of law, and not by consent of the parties to the case. Tysdal v. Tysdal, Mo.App., 235 S.W.2d 124." 249 S.W.2d loc. cit. 476.

For the reasons herein stated, I am of the opinion that the decree of the trial court, rendered under date of May 5, 1948 should be amended, nunc pro tunc, in such manner as to indicate that the stipulation executed on April 30, 1948, and filed in this cause on May 5, 1948, was approved by the trial court on May 5, 1948, and that the order of the trial court denying and overruling defendant's motion to correct record by deletion, should be affirmed.

Motion for rehearing or to transfer to Supreme Court denied; JOHN C. CASEY, Special Judge, dissenting.